Leonard PATTERSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–669.

Court of Criminal Appeals of Oklahoma.

July 20, 1977.

Rehearing Denied Aug. 4, 1977.

Robert W. Pittman, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Douglas L. Combs, Asst. Atty. Gen., for appellee.

3. *Glaspey v. Dickerson supra.*

## OPINION

BLISS, Judge:

Appellant, Leonard Patterson, hereinafter referred to as defendant, was charged in the District Court, Oklahoma County, Case No. CRF–75–526, with the offense of Murder in the First Degree, in violation of 21 O.S.Supp.1973, § 701.1(8). The case was tried to a jury and a guilty verdict was returned, which carried the mandatory death penalty. From judgment and sentence, defendant has perfected an appeal to this Court.

On February 4, 1975, the bodies of two men were found in a rural area of northeast Oklahoma City. One man, Phillip Edwards, was found in a ditch near the road. The other victim, Herbert Williams, was found about 150 yards away in a field. Both were black males, and had been shot and beaten. The victim in the ditch, Edwards, was identified by identification contained on his person; the other victim, Williams, was identified through police fingerprints. Defendant was arrested at about 3:30 p. m. the following day, February 5, at his home. By stipulation of the parties at oral argument, and from the record at the preliminary hearing and the hearing on defendant's motion to suppress, it appears that the police also searched their files relative to Herbert Williams, and discovered that a criminal complaint had been lodged against him by one Hazel Huggins only a few days prior to the homicide. Police questioned Huggins, and although she stated that she knew nothing of the homicides she did state to the officers that defendant could possibly have had a grudge against Williams because Williams had allegedly burglarized defendant's home several times. After talking to Huggins the officers then proceeded to defendant's home and arrested him for murder. He was taken to the Oklahoma City Police Headquarters and questioned, after being given *Miranda* warnings. A written consent to search defendant's home was signed by defendant on February 5. The search revealed several guns and several pairs of trousers. The guns were proven to have been used in the commission of the crime, and it was further proven that one of the victims had picked up the trousers from a cleaner on the day of the homicide, and had them with him when he was killed.

Numerous other arrests were made by police in connection with this case, including several members of defendant's family, as well as defendant's wife who was pregnant. On February 6 the defendant gave a statement to the police which amounted to a confession. Officers also obtained a statement from defendant's brother, Delbert Patterson, which indicated that Delbert Patterson had been with the defendant during the homicide, although Delbert had no part in it. Delbert's statement was made to officers in the defendant's presence, and after defendant urged Delbert to tell the police "all about it." Both defendant's and Delbert's statements were reduced to writing, and introduced into evidence.

Defendant's statement to the police amounted to a complete confession, including a statement that he intended to kill the victims. In essence, defendant stated that he observed the victims walking along the road, hitchhiking. Defendant passed them and proceeded to his home where he was joined by his brother Delbert. The brothers then got in Delbert's car, proceeded back to where the victims were walking, and offered them a ride. Defendant had a shotgun and a .38 in his possession. The victims were driven out to a field, where after a brief argument defendant killed them, Delbert having no part in it. Delbert's statement was essentially corroborative.

At trial the defense offered evidence which showed that the defendant was a hard working sort, who had just recently purchased his own home, and numerous furnishings for it. While on a trip to Kansas in July of 1974, defendant's home was burglarized, and all the furnishings in the home, including kitchen appliances, bedroom, dining room and living room furniture, a chandelier and all the carpeting were stolen. Defendant subsequently learned that the victim Herbert Williams

had bragged of doing this. In November of 1974, Herbert Williams threw a rock through defendant's window and then came into the home and kicked a hole in a door. Defendant was not home at the time, but defendant's wife told Williams that she would tell the defendant, whereupon Williams replied that he was not afraid, and that he would kill defendant and Delbert. A complaint was filed but no other action taken. This was because the victim Edwards told the defendant that since defendant worked nights and his wife and children were home alone it would not be wise for defendant's wife to testify against Williams. In December of 1974, defendant's home was again burglarized with a large amount of meat being stolen from a freezer. Williams subsequently bragged to defendant's wife of this burglary as well.

Defendant testified at trial and admitted the killings, but made a claim of self-defense, stating that before any shooting had taken place an argument occurred concerning the burglaries and the victim Edwards had thrown or struck him with a piece of concrete.

■ Defendant asserts that the trial court erred in refusing to instruct on anything except for murder in the first degree. This proposition is well taken. There is ample evidence in the record not only of the victim's criminal convictions, but also the fact that they had harassed and threatened defendant's family and repeatedly burglarized his home. Defendant also stated that he was afraid of the victims.

Title 21 O.S.1971, § 711, states:

"Homicide is manslaughter in the first degree in the following cases:

\* \* \* \* \* \*

"2. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide."

We are of the opinion that the events proven by the defendant relative to the harassment of defendant, and the burglary of his home by the victims were sufficient to show that the defendant could have been, and probably was, in a highly impassioned state of mind at the time of the homicide, and that therefore an instruction on manslaughter in the first degree should have been given, as requested by defendant.

■ Defendant also asserts that his arrest was not based upon probable cause, and that the waiver of search and the confession were involuntarily obtained. We disagree. Concerning the arrest, it appears from the record at the hearing on the motion to suppress and by stipulation of counsel before this Court at oral argument that the police were aware, through their conversations with Hazel Huggins, that defendant possibly had a motive for killing Williams and Edwards because of the burglaries of defendant's home. Probable cause does not mean absolute and irrefutable cause, but rather only facts which will lead a reasonably prudent person to believe that the arrestee had committed a crime. *Satterlee v. State*, Okl.Cr., 549 P.2d 104 (1976). It thus follows that the search waiver obtained two hours later while defendant was in custody and after he had been advised of his *Miranda* rights and of his right to refuse to consent to the search, was not "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The evidence obtained pursuant to this search was therefore properly admitted.

■ There exists, however, grave doubt as the the voluntariness of the statements given by defendant while in custody. Defendant was placed in a holding cell in the Oklahoma City jail, which is near the booking desk. While in jail he had opportunity to observe, and did observe, numerous members of his family being booked into jail on a murder charge. The psychological coercion to confess which was present under these circumstances was obviously enormous, especially in view of the fact that officers advised defendant that they did not believe that defendant's family had anything to do with the crime. Were the con-

fession to be ruled inadmissible, the State's case for murder in the first degree would be considerably weakened. However, since defendant took the stand and admitted the killings, and since the trial court erroneously failed to instruct on manslaughter in the first degree we deem it unnecessary to decide whether the confession was involuntarily obtained, and hold instead that the interest of justice could be best served by modifying the conviction of murder in the first degree to manslaughter in the first degree. There is little doubt in our minds that were this case returned to the District Court for retrial, and the jury properly instructed, they would return a verdict of manslaughter rather than murder. Therefore, pursuant to our power of modification under 22 O.S.1971, § 1066, defendant's conviction will be modified to manslaughter in the first degree, and defendant is sentenced to fifteen (15) years' imprisonment. See, *Biggerstaff v. State*, Okl.Cr., 491 P.2d 345 (1971).

We have carefully examined the other propositions urged by defendant, and find that they would not necessitate a new trial of this cause.

For the foregoing reasons the judgment and sentence as MODIFIED is otherwise AFFIRMED.