**Ralph Fowler MARTIN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. M–79–510.**

Court of Criminal Appeals of Oklahoma.

Nov. 20, 1980.

Jordan & Morris, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Oklahoma, Danny K. Shadid, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Ralph Fowler Martin, the appellant in this case, who shall hereinafter be referred to as the defendant, was charged with the crime of Possession of Marihuana in the District Court of Oklahoma County, Case No. CRM–79–342. He was found guilty by the trial court after waiving a jury trial. Punishment was set at six (6) months in the Oklahoma County Jail, with the sentence suspended.

The events leading up to the arrest, as revealed by the testimony of the police officers, are as follows: On February 4, 1979, officers Larry Beaver and Art Trujillo were patrolling an area on N.E. 10th Street in Midwest City. In the early morning hours that day, they received a call on their police radio informing them of a possible burglary or attempted burglary which had occurred minutes earlier south of their district. According to the officers' testimony, the dispatch described the suspect as a black male wearing a dark colored ski mask or stocking cap and dark clothing.

The officers testified that thirty minutes to one hour later, at about 4:55 a. m., they were westbound on N.E. 10th when they passed the defendant driving the opposite direction. Officer Beaver believed that the defendant met the description of the burglary suspect and said so to his companion and the officers turned and stopped the defendant in order to ascertain his identity and to inquire into his activities prior to the stop. They testified that they did not intend to effectuate an arrest when they made the stop but merely to make an inquiry.

After the stop, the officers approached the car and requested the defendant to identify himself. He responded by producing a certificate from the Department of Public Safety showing that his driver's license had been revoked but that he had limited driving privileges. The privileges did not, however, include the early morning hours. The officers placed the defendant under arrest and took him to the police station where a search revealed a small amount of marihuana hidden on his person. Before the trial, the defendant moved to suppress the evidence on the grounds that it had been obtained through an illegal search and seizure. He also made a motion requesting that all exculpatory evidence in the possession of the district attorney be released to the defendant. The motion to suppress the evidence was denied, and at the hearing on the motion to produce exculpatory evidence the trial judge ruled that the D.A. possessed no exculpatory evidence.

The defendant's first assignment of error is that the trial court erred in overruling his motion to suppress the marihuana found on his person after the arrest. He maintains that the officers lacked probable cause to make the arrest and that as a result, any evidence seized pursuant to that arrest is inadmissible by virtue of the Fourth Amendment's proscription of unlawful searches and seizures.

Title 22 O.S.Supp.1979, § 196, provides that "[a] peace officer may, without a warrant, arrest a person: . . . [w]hen a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it." It is the

appellant's position that the officers did not have reasonable cause to believe that the defendant was guilty of the commission of a felony.

In determining the scope of constitutional protection afforded by the Fourth Amendment to persons to be free from unreasonable restrictions on their privacy, the Supreme Court in *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), set forth the following test:

> Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it— whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. 379 U.S., at 91, 85 S.Ct. at 225.

Applying that test to the present case, it is clear that the officers lacked the requisite knowledge of facts and circumstances necessary to constitute probable cause to arrest the defendant at the time they stopped him.

It is the State's contention, however, that the officers did not intend to arrest the defendant when the initial stop was made; that the initial stop was in the nature of an investigatory detention and that a lesser amount of information is needed to justify such an investigatory stop than is necessary to constitute probable cause for an arrest. The State argues that the actual arrest was not effected until the officers learned that the defendant was violating the terms of his driving certificate.

In drawing the line between an arrest and a mere investigatory detention, we have previously held that the intention of the officers is controlling. *Castellano v. State*, Okl.Cr., 585 P.2d 361 (1978). In *Castellano*, the distinction between the two was expressed as:

> If an officer is momentarily detaining a person in order to make inquiries so as to determine his identity and obtain more information, and is in no way attempting

to restrain him of his liberty or take him into custody, then the stop does not constitute an arrest but, rather, is an investigatory detention."

Officer Beaver testified at the trial that at the time he pulled the defendant's vehicle over, he intended only to ascertain the defendant's identity and to gain more information. He further testified that he did not intend to make an arrest until he learned the defendant had violated the terms of his driving privileges. The officers' testimony therefore suggests that the stop was indeed an investigatory detention.

While recognizing that a lesser amount of information is needed to justify an investigatory detention, or "stop and frisk" as it has been termed, the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), refused to hold that the Fourth Amendment provides no protection to the individual in such situation. The Court held that the reasonableness of an investigatory detention is to be determined by weighing the interests of the State in effective law enforcement against the interest of the individual in being free from arbitrary invasions of his liberty. To overcome the strictures of the Fourth Amendment, the Court held that an officer ". . . must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S., at page 21, 88 S.Ct. at page 1880. The Court pointed out that to hold law enforcement officers to a lower standard would allow the abridgment of constitutionally guaranteed rights granted on nothing more than "inarticulable hunches."

In *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the Supreme Court was asked to apply its holding in *Terry*, supra, to an investigative stop of an automobile, where the officer had not observed a traffic violation nor any suspicious activity on the part of the defendant. Rather, the officer testified that he stopped the vehicle without any suspicion of unlawful activity in order to check the defendant's driver's license and registration. The

Supreme Court, agreeing that the stop violated the petitioner's Fourth Amendment rights, stated that "[t]o insist neither upon an appropriate factual basis for suspicion directed at a particular automobile nor upon some other substantial and objective standard or rule to govern the exercise of discretion 'would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches . . .'" 440 U.S., at 661, 99 S.Ct. at 1400 quoting *Terry v. Ohio*, supra, at 22, 88 S.Ct. at 1880. The Supreme Court summarized its holding in *Prouse* as follows:

> [E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. 440 U.S., at 663, 99 S.Ct. at 1401.

■ In applying the holdings of *Terry* and *Prouse* to the instant case, the constitutional validity of the arrest and subsequent search and seizure turns on the question of the reasonableness of the initial stop in the light of the facts and circumstances known to the officers at the time they made the stop. The officers testified that they did not observe any suspicious behavior on the part of the defendant nor did they suspect that a crime was being committed in their presence. Their only articulated basis for the initial stop was the police radio bulletin describing a black man with a dark colored stocking cap and dark clothing. The officers testimony regarding the substance of the police bulletin did not reveal the location of the alleged burglary nor whether the description of the suspect's vehicle was given.

It has been recognized that information received from a police radio dispatch reporting the commission of a felony giving an adequate description of the suspected felons will furnish probable cause to make an arrest or reasonable ground for an investigatory stop. *Jones v. State*, Okl.Cr., 507 P.2d 1267 (1973), *Holt v. State*, Okl.Cr., 506 P.2d 561 (1973), *McKay v. State*, Okl.Cr., 472 P.2d 445 (1970). But where the information possessed by the informing officer is insufficient to furnish probable cause to make an arrest the fact that a fellow officer relies on it will not carry the sufficiency. *Whitely v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Although the question has never been specifically addressed in this jurisdiction, the holdings of the Supreme Court of the United States in *Terry*, supra, and *Whitely*, supra, require that the same principles hold true for an investigatory detention.

In the case at bar had the bulletin received by Officer Beaver supplied him with a sufficiently detailed description of the burglary suspect, or had the defendant's behavior given the officer some indication from which he reasonably could have inferred that the defendant was the subject of the dispatch, the requisite reasonable grounds for an investigatory detention would have existed. However, the officer's testimony relating the description given in the bulletin indicated that that description was so vague as to amount to no description at all. In such a situation, the State's interest in effective law enforcement cannot justify so significant an intrusion into the individual's constitutionally protected rights.

■ We emphasize that an officer may effect an investigatory stop of a suspect based upon information he has received in a police bulletin which would not amount to probable cause for arrest. The officer's actions, however, must be reasonable in light of the facts and circumstances known to him at the time he made the stop. Where it appears that the information upon which the officer relied to make the stop was inadequate to support a reasonable inference of criminal activity, the Fourth Amendment prohibition of illegal searches and seizures requires that the "fruits" of the unlawful stop be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Since the initial stop of the defendant's vehicle was unlawful, the judgment of the district court must be REVERSED and the case REMANDED with orders to suppress the illegally obtained evidence.

CORNISH, P. J., and BRETT, J., concur.