John Wallace SATTERLEE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–638.

Court of Criminal Appeals of Oklahoma.

April 14, 1976.

Leslie R. Earl, Jr., Public Defender, Pete Silva, Jr., Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Harold T. Garvin, Jr., Legal Intern, for appellee.

## OPINION

BLISS, Judge.

Appellant, John Wallace Satterlee, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–74–2985, for the offense of Robbery With Firearms, After Former Conviction of a Felony, in violation of 21 O.S.Supp.1973, § 801. At the conclusion of his two stage trial, the jury recommended, and the judge imposed, a sentence of one hundred (100) years' imprisonment. From said judgment and sentence, a timely appeal has been perfected to this Court.

The State's first witness at trial was Gene Gates, a registered pharmacist and owner of Gene Gates Pharmacy. He testified that on December 19, 1974, at 9:05 a. m. which was shortly after he and his nephew opened the store, he observed a gunman, wearing a ski mask and jump suit, enter his pharmacy through the front door. Gates stated that he then attempted to leave through the back door, but as he opened the door he was confronted by two more gunmen who were also wearing ski masks and jump suits. He was then ordered back to the prescription area where his nephew was lying on the floor on his stomach with a gunman standing on his shoulder and gun at his head. One of the gunmen produced a zippered bag about 18 inches long and told him to "Fill the bag with the narcotics." After the witness had filled the bag with narcotics which had been labeled and coded, he and his nephew were directed to turn over money from the store and their persons which amounted to about $240.00. Gates further related that before the gunmen left, one of them stated that they wanted "About half a dozen" syringes, whereupon Gates took a "handful" and threw them into the bag.

Gates then identified certain of State's Exhibits including a brown case, blue stocking mask, and three pistols as "similar" to the items he had seen on the day of the incident. He further identified several narcotic bottles as ones which were taken from his store. Gates further stated that he did not give defendant permission to take the items from his store.

Steven Gates, a pharmacy student who was working for his uncle, Gene Gates, during Christmas break in December of 1974, next testified and corroborated his uncle's testimony. Young Gates further related that after one of the gunmen pinned his shoulders to the floor with a knee on each shoulder the gunman struck him with the gun, three times on the head and then once on the forearm as the witness protected himself with his own arm. As a result the witness sustained lacerations on his head which required sutures.

Alan Handley, a Broken Arrow Policeman, testified that on December 19, 1974, while driving his patrol car north on 161st Street he met a white Cadillac with three subjects therein proceeding southbound and noticed clothing flying out of said automobile. Handley stated that prior to seeing the Cadillac he had heard a broadcast on KRMG, a commercial radio station, that Gates Pharmacy had been held up by "three men wearing ski masks" and that they had escaped with an undetermined amount of drugs and money. The officer stated that soon after passing the Cadillac he stopped on the roadway and noticed the

articles of clothing which had been thrown out of the car, including a blue ski mask. Thereupon he turned his patrol car around and made chase of the Cadillac when the radio broadcast "went through his mind." He then stopped the Cadillac, whereupon the driver exited the vehicle saying, "Man, I'm a litterbug." He asked the driver to sit in the patrol car and then radioed for a backup unit. The driver of the Cadillac produced a Texas' driver's license bearing the name, "Robert Lee Green."

Handley further related that two patrol cars driven by Detective Boze and Patrolman Steves responded to his request for a backup unit. Detective Boze was then sent to retrieve the clothing. Officer Crosby then arrived whereupon Handley approached the suspects' vehicle, opened the left rear door and asked the remaining two occupants for identification. Handley stated that defendant produced an Oklahoma driver's license, bearing the name "Satterlee." The other occupant, who had no identification, stated that his name was "Donald Holt." The witness then identified the defendant. The officer further related that upon opening the car door he saw a brown bottle labeled "Demerol," laying face up on the floorboard. After radio communication was made with Tulsa authorities verifying the armed robbery, he and Officer Crosby removed the two subjects from the Cadillac, handcuffed them and placed them in patrol cars. Upon his return to the Cadillac Handley said that he noticed the back seat was pulled out approximately six inches, allowing him to observe syringe packages, a quantity of pill bottles and the corner of what he thought to be some money. The three subjects and their automobile were next transported to the Broken Arrow Police Station where Tulsa law enforcement Officers McCullough and Morris had been summoned. Handley then identified State's Exhibit No. 7 as the Demerol bottle which he had seen in the Cadillac.

On cross-examination, Handley testified that he had no knowledge that the drugs had not been legally prescribed, but did know that Demerol was a controlled drug. He further stated that he knew he had a good littering charge, but, in fact, stopped the Cadillac after he had seen articles on the roadway and become "suspicious" because of the broadcast over the radio.

Heinz Steves, a Broken Arrow Police Officer, testified that he was on the scene where Handley had stopped the Cadillac on December 19, 1974. He further related that he observed the person sitting in the right rear seat of the Cadillac move his arm up and down near the top edge of the rear seat.

Tulsa Police Officer Jess McCullough testified that on December 19, 1974, he was assigned to the Broken Arrow Police Department regarding the Gates Pharmacy robbery. Upon arriving at the police station be observed a white Cadillac nearby. He further testified that standing outside the car, without opening the door, and looking inside he saw a brown bottle on the floorboard and behind the back seat he could see a brown zippered bag, syringes and bottles. The witness then identified State's Exhibit No. 7 as the bottle which was on the rear floorboard of the white Cadillac, and State's Exhibit No. 8 as the label which was on the bottle. He further identified State's Exhibit No. 1 as the brown zippered bag which he saw in the car and State's Exhibit No. 5 as the chrome weapon which was found, fully loaded and cocked, in the zippered bag. The witness then related that he followed the Cadillac, which was being towed, to Al Storey Wrecker where it was placed in the custody of another officer. McCullough then left for some 30 to 40 minutes and upon returning he and Detective Dennit Morris, also of the Tulsa Police Department, then completed a search of the automobile. They opened the locked trunk with a key supplied by the wrecker service. In the trunk the witness found two revolvers, some cash, assorted clothing and a pair of brown or buckskin gloves. Officer McCullough then identified a number of

State's Exhibits as items which were taken from the white Cadillac.

On cross-examination McCullough stated that he had neither an arrest warrant nor a search warrant at the time he took the three subjects into custody, or when he searched their vehicle. He further testified that none of the three subjects gave him permission to search the automobile. He stated that he was present in the Broken Arrow Police Station when Officer Dennit Morris administered the Miranda warnings to the three subjects. He also stated that a total of approximately $180.00 had been found on the three subjects and in their vehicle.

The final witness for the State was Larry Johnson, an investigator for the Tulsa Police Department, who identified the defendant as the individual from whom he had taken a statement in the presence of Detective John Powell subsequent to advising him of his Miranda rights. Johnson then identified State's Exhibit No. 16 as a certificate of notification of rights form and waiver which had been signed voluntarily and knowingly by defendant in the presence of himself and Detective Powell prior to making a statement. The witness then related the fruits of the statement given by defendant which were, in essence, an admission of defendant's complicity of the crime charged.

Thereafter the State rested, the defendant put on no testimony and rested, and after arguments of counsel the jury returned a verdict of guilty.

Defendant, in his first assignment of error, avers that the trial court committed fundamental error in failing to remand his case for further preliminary hearing. Moreover, defendant contends that he did not receive a preliminary hearing before an impartial magistrate. The basis of the aforementioned argument is that the Honorable B. R. Beasley, who presided at defendant's preliminary hearing, had prosecuted co-defendant Robert Lee Green on a

charge of murder only three years previous to the instant matter.

We note that 20 O.S.1971, § 1401, provides in part:

"(a) No judge of any court shall sit in any cause or proceeding in which he may be interested, . . . or in which he has been of counsel for either side, or in which is called in question the validity of any judgment or proceeding in which he was of counsel or interested, . . . without the consent of the parties to said action entered of record."

We held in *Sam v. State*, Okl.Cr., 510 P.2d 978 (1973), that the fact that a judge had prosecuted the defendant in a previous case does not, by itself, show prejudice on the part of the judge. It has been generally held that if the cause and the issues are not the same the judge is not disqualified. Anno. 72 A.L.R.2d 443 (1960).

■ In the instant case the facts show that Judge Beasley had prosecuted a co-defendant in a completely unrelated matter three years prior to the filing of the information. The record is devoid of any indication that defendant was prejudiced in the preliminary hearing. Therefore defendant's first assignment of error is wholly without merit.

Defendant's second assignment of error asserts that the trial court erred in not sustaining defendant's motion to suppress items seized in violation of defendant's right against unreasonable search and seizure. The thrust of defendant's argument is that the initial arrest and search were without probable cause and therefore the arrest was illegal, thereby rendering the search illegal.

Defendant relies upon *Thompson v. State*, Okl.Cr., 444 P.2d 849 (1968), which held that mere suspicion is not enough to merit a warrantless arrest and search. He contends that the arrest was made on mere suspicion because the officer admitted that he stopped the Cadillac because he "was

suspicious of what [he] heard over the radio."

We believe that the authority which defendant relies upon is sound, however, his application of the term "suspicion" is erroneous. Merely because an officer testifies that he was "suspicious" does not, in and of itself, negate the existence of probable cause for a lawful arrest. We first note that 22 O.S.1971, § 196, provides in part:

"A peace officer may, without a warrant, arrest a person:

   \*    \*    \*    \*    \*    \*

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

This Court has held that the use of the term "probable cause" or "reasonable cause" itself imports that there may not be absolute, irrefutable cause. *Wilson v. State,* Okl.Cr., 458 P.2d 315 (1969); *Wafers v. State,* Okl.Cr., 444 P.2d 825 (1968). If a peace officer arrests a person without a warrant the arrest is not unlawful if the officer, upon his own knowledge or upon facts communicated to him by others, has reasonable cause to believe the person arrested has committed a felony. See, *Byrnes v. State,* Okl.Cr., 451 P.2d 19 (1969).

In determining probable cause to make a warrantless arrest, we held in *Greene v. State,* Okl.Cr., 508 P.2d 1095, at page 1097 (1973), that:

"The test is 'whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the fact and circumstances within their knowledge and of which they had reasonably trustworthy information was sufficient to warrant a prudent man in believing that the petitioner [arrestee] had committed or was committing an offense.' *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). . . ."

See also, *Mahan v. State,* Okl.Cr., 508 P.2d 703 (1973).

We perceive that the facts and circumstances in the instant case would warrant a prudent man in believing that the defendant had committed the offense. The officer heard on a commercial radio station that the Gates Pharmacy had been held up by three men wearing ski masks, and about one-half hour later he met a vehicle with three subjects therein who were throwing out articles of clothing, including a ski mask, whereupon the arrest was ecfectuated. The validity of stopping the vehicle is reinforced by the fact that the occupants were violating a City littering ordinance in the presence of the officer, which in the instant case cannot be said to constitute a subterfuge arrest.

The validity of the arrest having been established, we next turn to the consideration of the seizure of various articles from within the car which were later introduced into evidence over the defendant's motion to suppress, and which incriminated the defendant. At the preliminary hearing, Officer McCullough testified that he was assigned to the investigation of the robbery of the Gates Pharmacy and that upon arrival at the Broken Arrow Police Station he conversed with arresting officer Handley and proceeded to perform an inventory search of the automobile seized. He further stated that an inventory of a seized automobile is a customary procedure when the occupants of the auto are under arrest and the vehicle is to be impounded.

A "police inventory" is a recognized police procedure of an administrative process to be followed pursuant to a valid impoundment so long as the "inventory search" meets the Fourth Amendment requirements of "reasonableness." See, *Fruit v. State,* Okl.Cr., 528 P.2d 331 (1974); *State v. Shorney,* Okl.Cr., 524 P. 2d 69 (1974); *Gonzales v. State,* Okl.Cr., 507 P.2d 1277 (1973); *Bennett v. State,* Okl.Cr., 507 P.2d 1252 (1973). Yet, "the search of an automobile is far less intru-

sive on the rights protected by the Fourth Amendment than the search of one's person or of a building." *Almeida-Sanchez v. United States,* 413 U.S. 266, 279, 93 S.Ct. 2535, 2542, 37 L.Ed.2d 596 (1973) (Powell, J., concurring) cited in *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).

▮ The "reasonableness" of the officers' conduct in the instant case must be examined by the record which reflects that after a conversation with the arresting officer, Officer McCullough with Officer Dennit Morris proceeded to perform an inventory of the seized automobile located behind the Broken Arrow Police Station. Officer McCullough's testimony at the preliminary hearing further revealed that prior to entering the automobile and beginning the inventory Officer McCullough, while standing outside the automobile, observed inside the automobile on the floorboard a bottle of Demerol with a Gates Pharmacy label on it, and further observed behind the backrest of the seat a brown leather zippered bag, what appeared to be certain bottles of narcotics and syringes, and a chrome revolver. Therefore, Officer McCullough, having personal knowledge of the robbery of Gates Pharmacy, had probable cause to believe the objects observed within his plain view were fruits of the robbery and, thus, the objects were reasonably and constitutionally subject to a warrantless plain view seizure. See, *Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Collidge v. New Hampshire,* 403 U.S. 443, 465, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Bonham v. State,* Okl.Cr., 507 P.

2d 1336 (1973); *Battles v. State,* Okl.Cr., 459 P.2d 623 (1969); see also, *Reynolds v. State,* Okl.Cr., 511 P.2d 1145 (1973); and, *Mahan v. State,* Okl.Cr., 510 P.2d 291 (1973). Although Officer McCullough characterized the search an "inventory search," we do not find it necessary to justify the plain view seizure of the various articles upon such a theory, as the inventory had not begun at the time the articles came within the plain view of Officer, McCullough.

▮ Having constitutionally seized the incriminating evidence in the back seat, the officers were then justified in broadening the search of the automobile to the subsequent entry into the trunk and subsequent plain view seizure of the various incriminating items therein and this was constitutionally permissible as the officers had probable cause to believe other incriminating evidence was concealed in the car. See, *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and *Chambers v. Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419.[1] For all the above and foregoing reasons we conclude that the police officers' warrantless seizure of the incriminating evidence was constitutionally reasonable and thus we find no error in the lower court's failure to sustain the defendant's motion to suppress.

▮ The defendant next contends that the trial court erred in not granting defendant's motion for mistrial based on the District Attorney's improper comments during the second stage proceedings. We first note that prejudicial remarks made during the second stage of a bifurcated proceeding, after the guilty verdict has

---

[1]. We also note arresting officer Handley at the scene of the arrest similarly observed incriminating articles inside the car and thus with the information he received from the police radio dispatcher he had probable cause to believe the articles within his "open view" were fruits of a crime, and the articles could have been constitutionally seized at that time. See, *Coolidge v. New Hampshire,* supra. Also, such probable cause would not

dissipate upon the seizure and subsequent removal of the car to the police station. Therefore, a subsequent reasonable search of the car at the police station would not have to be independently justified. See, *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L. Ed.2d 209 (1975). Yet, such reasoning is not the basis upon which we uphold today the search and seizure in question.

been returned, can only result in modification if necessary, but not reversal. See, *Webb v. State,* Okl.Cr., 546 P.2d 642 (1976); *Carbray v. State,* Okl.Cr., 545 P.2d 813 (1976); *Stokes v. State,* Okl.Cr., 501 P.2d 864 (1972). A careful examination of the prosecutor's closing argument in the second stage proceedings reflects an indirect, yet unmistakable, reference to the pardon and parole policies of this State. We have held that it is improper for the prosecuting attorney to refer to possible reduction of the sentence imposed by pardon and parole or deduction for good behavior. See, *Tucker v. State,* Okl.Cr., 499 P.2d 458 (1972). The appropriate inquiry made on an ad hoc case by case approach is whether in light of the totality of the closing argument the prosecuting attorney makes such an unmistakable reference to the pardon and parole system of Oklahoma as to result in prejudice to the defendant, thus meriting modification if the reference occurs during the second stage of the bifurcated proceeding. See, *Webb v. State,* supra; *Carbray v. State,* supra.

In the instant case we are of the opinion that the prosecuting attorney's closing argument, although not in bad faith, was calculated and constituted a sufficient reference, indirectly, to the pardon and parole policy of Oklahoma such as to be prejudicial to the defendant. We are thus of the opinion that such reference under the particular facts of this case contributed to the jury's assessment of the punishment. Therefore, justice dictates modification of defendant's sentence from the term of one hundred (100) years' imprisonment to a term of forty-five (45) years' imprisonment.

For the above reasons the judgment and sentence is modified from a term of one hundred (100) years' imprisonment to a term of forty-five (45) years' imprisonment; and as so *MODIFIED is AFFIRMED.*

BRETT, P. J., and BUSSEY, J., concur.