**Cecil Dejuan HARRIS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–80–305.**

Court of Criminal Appeals of Oklahoma.

May 28, 1982.

Rehearing Denied June 14, 1982.

J. Malone Brewer, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Chief, Crim. Appellate Div., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The appellant, Cecil Dejuan Harris, was tried and convicted in Cleveland County District Court, Case No. CRF–79–298, for Rape in the First Degree. The jury set punishment at five (5) years' imprisonment.

The State's case-in-chief consisted mainly of the uncorroborated testimony of J.C.W., the appellant's thirteen-year-old stepdaughter. She testified that early one morning during the first week of April, 1979, the appellant had awakened her and had her follow him back to his bedroom. Once there, the appellant and the young girl engaged in sexual intercourse.

In his defense, the appellant offered the testimony of several witnesses tending to show his good character and an alibi that he was out of town on the day the incident occurred. He bolstered this defense with credit card receipts allegedly received on the day in question.

The appellant raises several assignments of error concerning the sufficiency of the evidence, improper prosecutorial comment on his silence, and evidentiary harpoons thrown at both the trial and preliminary hearing. Our disposition of the case requires us to address only the propriety of the prosecutor's comments.

During cross-examination of the appellant at trial, the following exchange occurred:

Q. You've got all these receipts and you knew that you were out of town every day with Olen. Why didn't you save yourself all this grief and come forward with this evidence and save this whole proceeding?

A. I keep saying it, I didn't understand when this charge was. That is why we pulled receipts for ten months.

\* \* \* \* \* \*

Q. When did you first learn that it was the first week of April that you allegedly committed the act?

A. The Preliminary Hearing.

Q. All right. That was in June; is that correct?

A. Yes, sir.

Q. Why haven't you come forward between June and now and saved yourself this ordeal?

A. To keep you from changing the date to a different date.

The prosecutor continued this approach throughout the cross-examination and during closing argument. However, we confine our discussion to the above-quoted remark.

The State does not contest the impropriety of this remark, but argues it was waived by the appellant's failure to object. This

argument finds support from our decisions in *Runnels v. State*, 562 P.2d 932 (Okl.Cr. 1977) and *Boomershine v. State*, 634 P.2d 1318 (Okl.Cr.1981).

▮ Although we have not had occasion to address the precise issue, it seems clear to us that any comment or reference to a defendant's pre-trial silence is an improper infringement on the defendant's right against self-incrimination. The Fifth Amendment to the United States Constitution allows an accused to remain silent during every stage of a criminal proceeding. *Miranda v. Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966). He may not be coerced into relinquishing this right of silence by any means, either physical or mental. *Id.* at 448, 86 S.Ct. at 1614. Nor may any penalty be exacted for an accused's failure to give up his right to remain silent. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

▮ The prosecutor's cross-examination in the instant case imposed a penalty for the appellant's failure to waive his right of silence. By pointing out the appellant's failure to provide state officials with his alibi evidence prior to trial, the prosecutor urged the jury to draw an adverse inference from the appellant's silence. Thus, the State has effectively conveyed a warning to the appellant, as well as to other defendants in criminal trials, that they must present the State with their alibi at the time of their arrest or risk having their failure to do so used against them at trial.

Moreover, the penalty exacted for the appellant's silence is made no more palatable by the fact that the alibi evidence in this case consisted of documents instead of statements by the accused. In *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Supreme Court noted that the production of documents by an accused may have "communicative aspects" which give rise to the protections of the Fifth Amendment. This may occur where the production of the documents tacitly concedes their existence or involves their identification by the accused. *Id.* at 410, 96 S.Ct. at 1580.

Here, production of the appellant's alibi evidence not only required him to identify and to authenticate the documents, but to inform state officials of the connection between the documents and his assertion that he was out of town on the days in question. The documentary evidence was apparently insufficient to establish that fact without some testimony by the appellant. Accordingly, we hold that under the instant circumstances, the prosecutor's inquiry as to the reasons for the appellant's pre-trial silence was improper.

▮ In view of the appellant's failure to object to the prosecutor's questions, however, it must still be determined whether the error was waived. We hold that it was not.

In *Runnels v. State*, supra, we held that an indirect comment on a defendant's failure to take the stand did not rise to the level of fundamental error. Similarly, in *Boomershine v. State*, supra, we declined to reverse defendant's conviction on the basis of the prosecutor's comment on the defendant's failure to deny the charges while on the stand. Citing *Runnels*, we held that the error was not fundamental and had been waived by the defendant's failure to object. Thus, under these decisions, some conduct by the State in derogation of a defendant's Fifth Amendment rights is subject to being waived, if not objected to.

It is manifest, however, that at some point the prosecutor's conduct so impinges a defendant's right of silence that it may not be waived. We believe the circumstances of the instant case do rise to the point of *fundamental* error. The prosecutor's questions in this case were more than the tangential infringement upon Fifth Amendment rights which occurred in *Runnels* and *Boomershine*. Rather, they were a direct assault on the appellant's exercise of his right to remain silent. Under these circumstances, we refuse to overlook the error merely because of defense counsel's failure to object. Accordingly, we are compelled to reverse the judgment and sentence and remand for a new trial.

BRETT, P. J., concurs.

BUSSEY, J., dissents.

BUSSEY, Judge, dissenting:

From the record it would appear that the defendant welcomed the opportunity to explain why he had not disclosed his alibi to the police concerning his whereabouts on the day of the alleged rape. His explanation was that he did not reveal his presence outside the State (alibi) for fear that the State would change the date of the alleged offense, thus nullifying his defense. This explanation, by implication, placed in issue the good faith of the State. Had such explanation raised a reasonable doubt of the good faith of the prosecution and the guilt of the defendant, the tactic of not objecting would have been successful. It is well established that failure to object to evidence of other crimes, hearsay evidence and the failure to object to the introduction of the fruits of an unlawful search and seizure constitutes a waiver to raise these issues on appeal and I see no difference between these errors and the error now complained of. Therefore, I must respectfully dissent. Failure to object to the questions of the prosecutor constituted a waiver of the right to raise this issue on appeal.