**Josh Lee LUNSFORD, Jr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–80–824.**

Court of Criminal Appeals of Oklahoma.

Oct. 27, 1982.

Joseph E. McKimmey, Shawnee, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Chief, Appellate Crim. Div., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Josh Lunsford, Jr., was convicted on two counts of Burglary in the Second Degree, After Former Conviction of Two Felonies in Pottawatomie County District Court. Lunsford challenges the constitutionality of the police investigatory stop and subsequent arrest. We reverse.

The pivotal issue is whether the initial investigative stop of the appellant, Lunsford, by the Shawnee police can pass constitutional muster under the Fourth Amendment of the United States Constitution. The appellant argues that the investigatory stop was unconstitutional and therefore his subsequent confession should have been suppressed under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The United States Supreme Court recently in *Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), stated:

The Fourth and Fourteenth Amendments' prohibition of searches and seizures that are not supported by some objective justification governs all seizures of the person 'including seizures that involve only a brief detention short of traditional arrest.' While the Court has recognized that in some circumstances a person may be detained briefly, without probable cause to arrest him, any curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity. (Citations omitted).

 It must be further recognized that a police officer may stop and question a person if there is *reasonable suspicion* to believe the person is wanted for past criminal conduct. See, *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The officer must be "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). The U.S. Supreme Court further stated in *Terry v. Ohio, supra,* that "[t]his demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence." See also, *Sowell v. State,* 620 P.2d 429 (Okl.Cr.App.1980).

A close examination of the facts and circumstances surrounding the investigative stop, in this case, is necessary to determine whether the stop was lawful. On December 13, 1979, at around 10:00 a.m., the Shawnee police arrived at the home of Fran Burrows ostensibly to recover stolen drugs. Ms. Burrows is the mother of the appellant. The officers did not have either an arrest or search warrant. Officer Phillips testified that Ms. Burrows was advised of her *Miranda* rights. However, she was never placed under arrest. While the officers were at her home, Ms. Burrows informed them that she needed to drive to town to deliver a clarinet to her daughter at school. The police forbid her to drive to town alone, but

instead accompanied her to the school in a police car. The Shawnee police detained Ms. Burrows at her Seminole home for approximately three hours.

About 10:30 a.m., that same morning, Shawnee Detectives Larry James and Mr. Cheatham observed the appellant Josh Lunsford driving his car in Shawnee, Oklahoma. When the detectives recognized Lunsford they turned on their emergency red lights and stopped him. Detective James testified that he received information from an anonymous informant that Lunsford might have been involved in the burglary of the Humpty Dumpty store or at least have information concerning the burglary.

Detective James stated that once they stopped Lunsford's car he walked up to Lunsford and told him he needed to talk to him about a burglary. James stated that he asked Lunsford if he would walk to the back of the patrol car. Once Lunsford walked back to the patrol car, James asked him if he would accompany them to the police station. Lunsford allegedly consented. James further testified that at the time they stopped Lunsford they did not possess probable cause to arrest him. He stated that Lunsford was free to leave at any time.

The officers drove Lunsford to the police station and had Lunsford's sixteen year old girlfriend drive his car to the station. After initially denying any involvement in the burglaries, Lunsford eventually confessed to having participated in the two drug store burglaries. He informed Detective James that the drugs were hidden in the garage at his mother's home in Seminole. At that time, Officer Phillips, who was still stationed at Fran Burrows' home, was telephoned and informed where the drugs could be found. However, no drugs were ever discovered at the Burrows' home.

Josh Lunsford testified at his trial. His memory of the investigative stop on December 13, 1979, and the subsequent confession and arrest varied substantially from Detective James' version. Lunsford stated that when Detective James stopped him, he approached the car with his pistol drawn. He

testified that James then told him to get out and walk behind the car. Lunsford stated that once behind the car he was placed in handcuffs and taken to the police station. Once at the station, the police allegedly informed Lunsford that his mother had been arrested. The police then allowed him to call his mother to confirm that the police were with her. Lunsford testified that Detective James told him that if he would tell them how the burglaries happened they would not charge his mother or his girlfriend. He also related to the jury that James played Russian Roulette with him until he decided to confess to his involvement in the burglaries.

In applying the law of reasonable investigatory stops to the facts presented here, the crucial question becomes whether Detectives James and Cheatman had sufficient information to give rise to a reasonable suspicion that Lunsford was involved in prior criminal activity. *Martin v. State*, 620 P.2d 446 (Okl.Cr.App.1980). It is clear from the record that the only information of criminal conduct by Lunsford came from two unknown informants. This Court is of the opinion that these tips from two *unidentified* informants was not sufficient to raise a reasonable suspicion of criminality.

■ First, we note the burden is on the prosecution to prove the investigatory stop was reasonable, once it is challenged by the accused. See, *Leigh v. State*, 587 P.2d 1379 (Okl.Cr.App.1978). During the in camera hearing the State was required to show that under the totality of the circumstances the detaining officers had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez, supra*, 449 U.S. at 418, 101 S.Ct. at 695; citing *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). In this case, we hold that the prosecution failed to carry this burden.

■ At the in camera hearing the detaining officer conceded that he did not have probable cause to arrest Lunsford at the time of the stop. He testified that he stopped Lunsford on the information supplied by two unknown informants. There was no evidence presented as to the infor-

mants' reliability or identity. Further the detaining officer failed to articulate any basis for believing that the informant's information was correct. In fact, there was no information given in regard to the two informants. Additionally, there was no evidence that the information given to the police was corroborated in any manner.

Based upon these facts presented to the trial judge we are unable to hold that the officers possessed sufficient objective facts to create a reasonable suspicion that Lunsford had been involved in criminal conduct. The police appear to have stopped Lunsford on nothing more than a "casual rumor." *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969). In light of the facts known to the Shawnee police in regard to Lunsford's suspected criminal involvement, we find that under the Fourth Amendment of the United States Constitution they should have availed themselves to considerably less intrusive means to investigate and question Lunsford about his alleged participation in the burglaries.

In accordance with this decision the judgment and sentence is REVERSED and DISMISSED.

BRETT, P.J., concurs.

BUSSEY, J., concurs in results.