Warren Evern **NUTTER**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–80–462.

Court of Criminal Appeals of Oklahoma.

Feb. 1, 1983.

Rehearing Denied March 21, 1983.

Mark Barrett, Asst. Appellate Public Defender, Norman, for appellant.

Kelly Hays, Asst. Dist. Atty., Buffalo, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant, Warren Evern Nutter, was convicted of Murder in the Second Degree, in Harper County District Court, Case No. CRF–79–26, was sentenced to twenty-seven (27) years' imprisonment, and he appeals.

Although the appellant raises numerous assignments of error on appeal, the general language utilized in his motion for new trial [1] is insufficient to place the trial judge on notice of the errors now complained of, and failed to allow him an opportunity to cure the alleged errors; thus, the errors complained of have not been properly preserved for review on appeal. See, *McDuffie v. State,* 651 P.2d 1055 (Okl. Cr.1982), and cases cited therein. We again emphasize that it is incumbent upon counsel for the defense to specifically state the reasons underlying the motion for new trial to properly preserve the error(s) for appellate review. Accordingly, we will address only the appellant's allegations that the charging information was insufficient to confer jurisdiction upon the trial court and that the State presented insufficient evidence to sustain a conviction for murder in the second degree.[2]

Mrs. Thomas S. Storey testified that she last saw her husband on June 5, 1979, when he left their home in Americus, Georgia, driving the couple's 1976 green and white, half-ton, club cab, Ford pickup truck, with camper on it, bearing a Georgia license tag, RL–9427. She stated that she had located the truck at the Buffalo Body and Paint Works in Buffalo, Oklahoma. Further, she gave a physical description of her husband.

Billy Simms and Willis Bentley both testified that on June 11, 1979, between 3:30 p.m., and 4:00 p.m., the appellant, who was driving a vehicle fitting the description given by Mrs. Storey, stopped at the Selman Co-op store, where they were employed, and

---

1. The motion for new trial was as follows:

MOTION FOR NEW TRIAL

Comes now the defendant, Warren Evern Nutter, and respectfully moves that the Court grant him a new trial for the following reasons:

1. The Court has misdirected the Jury in matters of law and has erred in decisions concerning questions of law arising during the course of his trial.

2. That the verdict as rendered by the Jury is contrary to the law and the evidence as presented at his trial.

WHEREFORE premises considered the defendant, Warren Evern Nutter respectfully requests that the Court grant his motion for a new trial.

2. See Appendix.

purchased some gasoline. The two witnesses stated that the appellant was accompanied by a person, whom both positively identified from a photograph as Thomas S. Storey, who was never again seen alive.

Jerry McLain, a neighbor of Nutter's, testified that around 5:00 p.m. on that same day he had occasion to hear an explosion. He immediately looked towards the Nutter residence where the sound came from and saw a puff of smoke and the appellant, Warren Nutter, who had been blown off his feet from an explosion in a cistern located in back of Nutter's house. Further, the witness observed Mr. Nutter, who was driving a pickup truck, later identified as that owned by Mr. Storey, gather trash and dump several loads of it into the cistern. In addition, later in the day at approximately 7:30 p.m., having heard a second explosion, Mr. McLain saw the appellant and noticed that his hair had been singed.

Joe McLain related that on the day in question at about 7:30 p.m., as he passed by the Nutter residence he heard an explosion and smelled smoke. As he was backing up to investigate he was involved in a traffic accident with the appellant, who was driving the aforementioned vehicle, and did not have anyone else with him.

On July 26, 1979, the appellant told the county sheriff, Tony Alexander, who was investigating the fact that Mr. Storey was missing, that he had hired Storey to bring him from Americus, Georgia, back to Oklahoma and had paid him $250.00 for it. According to the sheriff, Nutter stated that he could not remember if Storey had left at the scene of the traffic accident he had with Joe McLain or whether he had gone with two men he met near his mother's residence close to the Kansas state line.

On August 15, 1979, law enforcement officers visited the appellant at his home in Selman, while continuing their search for Storey. Nutter was informed that the officers were trying to find Storey and he stated he would help them. The appellant, out of an abundance of caution by the officers, was read his *Miranda* rights, which he said he understood, and he signed a form consenting to a search of the cistern. The search was suspended when it became apparent that additional equipment would be necessary to effectively excavate the cistern. Nutter agreed to allow the officers to return the next morning with a backhoe.

The next morning Nutter was again informed of his *Miranda* rights and he stated he understood them and signed another consent to search form. Amidst the debris in the cistern, Storey's partially burnt body was found in an advanced state of decomposition. Despite great care being taken in exhuming the remains, the jawbone, some fingers and even the left foot became detached from the body. A billfold was found in a hip pocket, which contained a Veteran's Administration identification card and a drivers' license, both of which belonged to Thomas S. Storey.

Dr. Fred Jordan, Associate Chief Medical Examiner, testified that the remains were of Thomas S. Storey. Through his examination of the body, Dr. Jordan stated there was evidence of hemorrhaging on the left side of the victim's head in two places which occurred while Storey was alive, which led him to form the opinion that the deceased had died as a result of said head injuries, which were caused by use of blunt force. Further, from his examination he deduced that the victim did not die from smoke inhalation.

Sheriff Alexander and Deputy L.C. Littler testified that on August 27, 1979, they overheard the appellant state to his son-in-law, Henry Griffith, that he had killed his partner (buddy). Mr. Griffith testified that he told the appellant "looks like you got yourself a big one this time, Warren," and his father-in-law replied, "Yeah, they think I killed my partner."

██ The appellant's claim that the information was insufficient to confer jurisdiction upon the trial court because the information failed to allege facts which would constitute the commission of an imminently dangerous act is not well taken. The information charged the appellant with committing the crime of murder in the

Second Degree, and provided in pertinent part that he:

> ... [D]id unlawfully, willfully, and feloniously without authority of law, effect the death of Thomas S. Storey by striking him about the head and causing mortal wounds in the body of said Thomas S. Storey and from said wounds the said Thomas S. Storey did languish and die, said acts of Warren Evern Nutter being imminently dangerous to another person
>
> . . .

Clearly the State charged the appellant with murdering Storey by committing the imminently dangerous act of striking the victim in the head and causing mortal wounds. However, the appellant argues that the State should be required to provide more specific allegations of exactly how the wounds occurred; such a requirement is not mandated by the laws of our State. Title 22 O.S.1981, § 401(2), mandates that the indictment must contain: "A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." The test of the sufficiency of an information is whether the defendant was in fact misled by it and whether a conviction under it would expose the defendant to the possibility of subsequently being put in jeopardy a second time for the same offense. *Holloway v. State*, 602 P.2d 218 (Okl.Cr.1979), and cases cited therein. The test was met in the present case, and this assignment of error is without merit.

■ In alleging that the State did not present sufficient evidence to sustain his conviction of murder in the second degree, the appellant claims that the State failed to demonstrate that the death occurred as a result of the criminal agency of another, or that it was the result of an imminently dangerous act or that it resulted from a depraved mind. When the sufficiency of the evidence presented at trial is challenged on appeal, as it is here, the proper test is whether a prima facie case has been established. If that test is satisfied, then all questions of fact are for the jury to resolve. In reviewing the evidence to determine whether the State has established a prima facie case, we view the evidence in the light most favorable to the State. Furthermore, it is well established that a criminal case may be proved circumstantially and reasonable inferences drawn therefrom have the same probative effect as direct testimony. *Collins v. State*, 561 P.2d 1373 (Okl.Cr.1977); *Logan v. State*, 493 P.2d 842 (Okl.Cr.1972); *Young v. State*, 373 P.2d 273 (Okl.Cr.1962). Additionally, circumstantial evidence need not exclude every hypothesis or negate any possibility other than guilt. *Logan v. State*, supra.

■ The record before us discloses that the State presented sufficient evidence to support the verdict of the jury. This assignment of error is without merit.

In light of the foregoing, the judgment and sentence is therefore, AFFIRMED.

CORNISH and BRETT, JJ., concur.

### APPENDIX

We have reviewed the other assignments of error for fundamental error, and find that no errors requiring modification or reversal exist.

A) In his third and twelfth assignments of error, the appellant argues that the trial court erred in failing to instruct the jury on excusable homicide, manslaughter first and second degrees, and that no adverse inference could be drawn from the fact that Nutter did not testify. The record does not demonstrate that such instructions were requested at trial nor does it reveal any objection to the instructions as given. Any objections have been waived. *Butler v. State*, 645 P.2d 1030 (Okl.Cr.1982); and, *King v. State*, 640 P.2d 983 (Okl.Cr.1982), and cases cited therein.

B) In his fourth assignment of error, the appellant complains that the trial court erroneously limited his cross-examination of a witness concerning whether or not it was common practice to put trash in a cistern. Appellant concedes that the subject that was limited pertained strictly to a collateral issue. The scope of cross-examination rests

largely in the discretion of the trial court, and the limiting of cross-examination of a witness concerning matters purely collateral and not germane is not error. *Johnson v. State,* 386 P.2d 336 (Okl.Cr.1963), and cases cited therein; see also, 12 O.S.1981, § 2611(C).

C) Appellant contends, in his fifth assignment of error, that the trial court erred in failing to suppress evidence obtained from the cistern for the reason that his consent was not voluntarily given, and was therefore invalid. A thorough review of the record before us does not support the appellant's contention; rather, it shows that he knowingly and voluntarily, without coercion consented to the search, as exemplified by his signing of two separate consent to search forms. Where the consent of a defendant is shown to be "clear and convincing," a search based on consent is recognized as an exception to the warrant requirement in Oklahoma. *Case v. State,* 519 P.2d 523 (Okl.Cr.1974), and cases cited therein. The evidence complained of was properly admitted.

D) In his assignment of error number six, the appellant asserts that the trial court erred in admitting evidence obtained in violation of his Fifth Amendment right against self-incrimination. The record before us shows that the appellant was given his *Miranda* warnings, which he waived, prior to consenting to the searches of the cistern. Further, the full *Miranda* warnings were not required under the circumstances of this case, and for the reasons stated in *Holmes v. State,* 568 P.2d 317 (Okl.Cr.1977), this assignment of error is without merit.

E) In his seventh and eighth assignments of error, the appellant alleges that evidence of other crimes was improperly admitted and improperly instructed upon. Specifically, he contends that evidence regarding his traffic accident with Joe McLain should not have been admitted. We do not agree. According to testimony received at trial, the accident happened immediately after the second explosion occurred. It was prop-

erly admitted as part of the general transaction and factual background of the crime charged, and tended to prove the appellant's opportunity and knowledge of the crime. 12 O.S.1981, § 2404(B), and *Ray v. State,* 525 P.2d 1224 (Okl.Cr.1974).

In addition, we note that the record is void of any objections or requests for instructions regarding other crimes. This issue has been waived. (See, "A", supra).

F) In his ninth assignment of error, the appellant argues that the admission of photographs of the body in the cistern were improperly admitted. The pictures of the opening of the cistern and the victim's body had great probative value. They indicated the existence of the corpus delecti, the size and nature of the cistern, blackened walls due to fire, trash and soil partially covering the body, burns and injuries to the body and the advanced stage of decomposition. They were properly admitted. *Glidewell v. State,* 626 P.2d 1351 (Okl.Cr.1981); *Grizzle v. State,* 559 P.2d 474 (Okl.Cr.1977).

G) In his tenth assignment of error, the appellant complains of improper prosecutorial comments. However, the record is silent as to any contemporaneous objection to the comments, nor is there any request for an admonishment to the jury regarding them, therefore, any alleged error has been waived. *Smith v. State,* 594 P.2d 784 (Okl.Cr.1979). Further, the comments when viewed in their proper context were not such as to warrant reversal of the trial court.

H) In his ninth assignment of error, the appellant maintains that error occurred when the trial court refused to allow the jury to reveal certain testimony. In response to the jury's request the trial judge sent a note which stated: "You should govern yourselves by what your recollections are of the evidence you heard or observed in the courtroom." It should be noted that the procedure utilized by the trial court was not objected to at trial. Further, title 22 O.S.1981, § 894, relied upon by the appellant, has been construed to be mandatory only with regard to bringing the jury back into the courtroom, and the determination of whether the jury's request is granted lies

within the judicial discretion of the trial court. *Boling v. State,* 589 P.2d 1089 (Okl. Cr.1979), and cases cited therein.