Donald Ray KING, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-82-455.

Court of Criminal Appeals of Oklahoma.

Aug. 2, 1983.

Kenneth C. Watson, Asst. Public Defender, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Mary F. Williams, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant, Donald Ray King, hereinafter referred to as the defendant, was convicted of Murder in the First Degree in

Oklahoma County District Court, Case No. CRF–81–4504, was sentenced to a term of imprisonment for life, and he appeals.

Briefly stated, the facts testified to at trial were that the defendant went to Mrs. Georgia Bowens' home in Oklahoma City around 5:30 p.m. on October 4, 1981. Mrs. Bowens testified that the defendant, her first cousin, told her that he had come back (from Tulsa to Oklahoma City) "to kill Willy" (Jones), her daughter Joann's common law husband and that the defendant showed her a gun. Mrs. Bowens stated that while she, Joann and son William were sitting in the living room, King asked Joann if she (Joann) knew why Willy had shot him a few months prior. Then Mrs. Bowens testified that the defendant called Joann a liar when she answered that she did not know and that King accused Joann of telling Willy that he (the defendant) had raped her. An argument ensued. The defendant threatened to shoot Joann; whereupon she went into the kitchen and got a butcher knife. Mrs. Bowens testified that he pulled the gun from his pocket and shot Joann from a distance of about twelve (12) feet.

William Bowens testified that he saw the defendant shoot his sister three times.

George Bowens, who had been upstairs sleeping, testified that he saw the defendant drive away in a blue station wagon.

Trooper Vernon Riddle testified that he received a call on his radio that a black male, driving a blue station wagon with Tulsa county plates, was intoxicated on the Bailey Turnpike. After receiving additional information that King was wanted in reference to a shooting, the trooper arrested him.

■ As one of his assignments of error, the defendant challenges the arrest, contending that he was arrested without probable cause. Initially, we recognize that a police officer may stop and question a person if there is reasonable suspicion to believe the person is wanted for past criminal conduct. *Lunsford v. State,* 652 P.2d 1243 (Okl.Cr.1982), citing *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). After a careful review of the record, we conclude that the arresting officer clearly had probable cause and that the stop was lawful. At the in-camera hearing, Trooper Riddle testified that he initially received a call from the Highway Patrol dispatcher at the maintenance barn. The dispatcher had been called by the toll-taker at the Newcastle gate on the Bailey Turnpike who related that there was a drinking driver and gave a description of the car. The arresting trooper testified that the description matched the car the defendant was driving.

Then, as the trooper proceeded in the direction of the driver, he heard a radio broadcast of the Oklahoma City Department of Public Safety, that the driver of the blue station wagon was wanted in reference to a possible homicide. It is well established that the basis for an officer's belief that a suspect has committed a crime can come from outside sources, i.e., a radio bulletin. *Nealy v. State,* 636 P.2d 378 (Okl. Cr.1981) and cases cited therein.

■ In a related issue, the defendant asserts that the police's "inventory" of the vehicle was unlawful. The "inventory" produced the gun, which was admitted into evidence over defense counsel's objection. Generally, a police search of an object is valid only if authorized by a valid warrant; however, an exception to the warrant requirement is a reasonable search incident to a valid arrest. *Greene v. State,* 508 P.2d 1095 (Okl.Cr.1973) and cases cited therein. We are of the opinion that the evidence showed that a valid arrest was made, and therefore, the gun was properly admitted into evidence. See also, *Satterlee v. State,* 549 P.2d 104 (Okl.Cr.1976).

■ In his next assignment of error, the defendant argues that the trial court erred in admitting a picture of the crime scene and two x-rays of the victim. Specifically, he claims the color photograph showing the kitchen and blood on the floor was admitted to inflame the passions of the jurors. We have stated on numerous occasions that the test for admissibility of allegedly gruesome pictures is whether the

probative value of the evidence, as it relates to an issue in the case, outweighs the prejudicial effect. *Glidewell v. State,* 626 P.2d 1351 (Okl.Cr.1981). See also, *Oxendine v. State,* 335 P.2d 940 (Okl.Cr.1958). The trial court admitted the photograph into evidence because it was a more accurate portrayal of where the blood was in relation to other items in the kitchen than an inaccurate sketch made by Officer Edward Johnson. It had probative value in that it tended to establish the location in the kitchen where she was shot and from what distance. As stated in *Glidewell,* supra at 1354, "the admissibility of allegedly gruesome photographs is within the discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is shown." We also note that the judge refused to admit other similar photographs because of their repetitive nature. Therefore, under these circumstances, this Court finds no abuse of discretion in admitting the photograph.

As to the x-rays of the victim's skull and chest, we find them probative in that the victim was killed by a bullet to the head and was shot in the chest, and that their value outweighs any danger of prejudice.

▉ Next, the defendant contends that the court erred by overruling his motion for a mistrial after a State's witness testified about a rape the defendant may have committed.[1] This Court has consistently held that the general rule in this State is that when a defendant is put on trial for one offense, evidence of other crimes is inadmissible. *Atnip v. State,* 564 P.2d 660 (Okl.Cr. 1977). This Court also recognizes five exceptions to the rule, thus admitting such evidence. *Atnip,* supra at 663. However, this is not an *Atnip* case where the State purposefully attempts to bring the evidence under one of the exceptions. Instead, this is a case, as the defendant agrees, where the evidence of an alleged rape came out inadvertently. After reviewing the complete testimony of William Bowens, it becomes evident that the State's purpose was to get his eye-witness account of what led to the shooting and the shooting itself, not to introduce evidence of a prior rape allegedly committed by the defendant.

Moreover, we believe that the trial court's admonition to the jurors cured any error which may have occurred.[2] See, *Kitchens v. State,* 513 P.2d 1300 (Okl.Cr. 1973) where this Court held that the court's admonition to the jury not to consider the remarks of a witness usually cures an error unless it is of such a nature that after considering the evidence, the error appears to have determined the verdict. We cannot

---

1. See particularly the witness' last answer concerning the defendant's alleged rape of witness' sister:

Q. All right. Did something unusual happened [sic] at that time?
A. Yes, sir.
Q. What happened, William?
A. Okay. When I went in the house and sit down, I was going to ask Donald Ray a question about Bobby Chism. And he said: Boy, I could tell you anything about Bob Chism. You'll have to pay me to preach. Someone would have to pay me to minister. So, I was kind of, you, kind of turned off to him because I was looking up to this fellow, you know, for a long time. And—okay.
Q. Then what happened?
A. He started talking to my sister.
Q. Did you hear the conversation?
A. I remember he said something like: You know, you're the reason I got shot. And my sister told him that he was a liar.
Q. Did you hear any further conversation?
A. And I couldn't say exactly the words that they said, but the reasons was, see, my sister said that the reason that—no, he said—well, it seems to me the reason that he got shot was because when he was suppose—he raped my sister.

2. The judge's admonition was as follows:

THE COURT: Ladies and gentlemen of the jury, you are reminded that we're here concerned with only one thing and that's the offense that was set out in the Information which has earlier been read to you.

If through, inadvertence or otherwise, some reference is made to perhaps an offense other than that, it has no bearing on this case and you are to ignore it and put it out of your minds.

Is there anyone here who cannot do that? If so, hold up hand.

All indicate they can put it out of their minds. And you are admonished by this Court to do so.

conclude that the alleged error determined the verdict in view of all the other evidence.

■ We also note that even though he objected to the remark at trial, the alleged error was not properly preserved for this Court's review because of the general language used in his motion for new trial. *Nutter v. State,* 658 P.2d 492 (Okl.Cr.1983).

■ In his final assignment of error, the defendant argues that the trial court erred by allowing the State to comment on his failure to testify.[3] We agree with the defendant that the State did make a comment. Georgia and William Bowens were the only eyewitnesses to the shooting, other than the victim and the defendant, and both Georgia and William had testified. However, defense counsel failed to object or move for a mistrial, therefore, the defendant has waived his right.[4] *Boomershine v. State,* 634 P.2d 1318 (Okl.Cr.1981). See also, *Goforth v. State,* 595 P.2d 813 (Okl.Cr. 1979). As we stated in *Runnels v. State,* 562 P.2d 932 (Okl.Cr.1977), cert. denied, 434 U.S. 893, 98 S.Ct. 270, 54 L.Ed.2d 179:

> It is error for the prosecutor to comment—either directly or indirectly, at any stage of the jury trial—upon a defendant's right to remain silent. Defense counsel must preserve the error by timely objecting to the comment and moving for a mistrial, the only remedy available since an admonishment to the jury would only compound the error.

**3.** During his closing argument, the Assistant District Attorney stated the following:

> And I want you to realize that what happened on October the 4th, 1981, at about 6:00 p.m., at 305 Northeast 3rd Street, in Oklahoma City, Oklahoma County, State of Oklahoma, when Donald Ray King killed JoAnn Bowens. That it happened very quickly. It was not in slow motion. They were not going by any script. It happened in an instance. He intended what he intended.
>
> We've proven all the elements of Murder in the First Degree. And there's one witness that did not take the witness stand. There's one.
>
> In addition to the State's case, you have the stipulation of the parties. The defendant and his lawyer stipulated right there in open

For the foregoing reasons, the judgment and sentence appealed from is hereby AFFIRMED.

BRETT, J., concurs.

CORNISH, J., dissents.

CORNISH, Judge, dissenting:

I am of the view that the State impermissibly commented upon appellant's exercise of his right to remain silent and that this constituted fundamental error. *Dungan v. State,* 651 P.2d 1064 (Okl.Cr.1982) and *Harris v. State,* 645 P.2d 1036 (Okl.Cr.1982). The prosecutor's statement during closing argument that, "We've proven all the elements of Murder in the First Degree. And there's one witness that did not take the witness stand. There's one." is inescapably a reference to appellant's failure to take the witness stand.

*Dungan* and *Harris* deal with a slightly different aspect of the Fifth Amendment right to remain silent, that being freedom from prosecutorial evidence of defendant's post-arrest silence. In those cases we held that proof of such was fundamental error and survived defense counsel's failure to object. Freedom from a prosecutorial comment regarding the defendant's failure to give testimonial evidence is an aspect of the Fifth Amendment privilege of equal import. Violation here is fundamental error which is not waived by defense counsel's failure to object.

> court and the judge gave it to you that I was at 305 Northeast 3rd Street in Oklahoma City, Oklahoma; that I had the gun that was fired that killed JoAnn Bowens. That was the stipulation that he made. He made it because he didn't want her picture in evidence. [Tr. 230].

**4.** After carefully reviewing the trial proceedings and the evidence, we find that the Assistant District Attorney's comment did not rise to the level of fundamental error. Furthermore, even if a timely objection had been made and the court would have admonished the jury; any error would have been harmless under the test set forth in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).