Gary Lee **EPKER**, and Ralph David Swepston, Appellants,

v.

The **STATE** of Oklahoma, Appellee.

Nos. F–84–285, F–84–286.

Court of Criminal Appeals of Oklahoma.

April 18, 1988.

Gloyd McCoy, Asst. Appellate Public Defender, Norman, for appellant Epker.

Mark Barrett, Appellate Public Defender, Norman, for appellant Swepston.

Michael G. Turpen, Atty. Gen., Mary F. Williams, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellants, Gary Lee Epker, and Ralph David Swepston, were tried by jury for the crime of Knowingly Concealing Stolen Property in violation of 21 O.S.1981, § 1713 in Count II of Case No. CRF–83–313 and for the crime of Second Degree Burglary in violation of 21 O.S.1981, § 1435 in Count III of Case No. CRF–83–313 in the District Court of Muskogee County. Appellants were represented by separate counsel. The jury returned a verdict of not guilty for both appellants on Count III. The jury found appellant Epker guilty in Count II for Knowingly Concealing Stolen Property and set punishment at twenty (20) years' imprisonment. The jury found appellant Swepston guilty of Knowingly Concealing Stolen Property, After Former Conviction of Two Felonies in violation of 21 O.S.1981, § 51(B) and set punishment at forty-five (45) years' imprisonment. From these judgments and sentences, appellants appeal to this Court.

Case No. F–84–285 for appellant Epker and Case No. F–84–286 for appellant Swepston are combined for purposes of this appeal due to the similarities in the assignments of error.

On May 30, 1983, at about 2:00 a.m., Mr. L.K. Smith heard the loud exhaust pipes of a vehicle on the highway not far from his home. The noise persisted and he looked to see that a gold or brown Ranchero pickup truck was driving back and forth in front of Cotton's Club, a business located next to Mr. Smith's property. He became suspicious and watched as the vehicle pulled into the parking lot of Cotton's Club and remained there for fifteen (15) minutes. Mr. Smith did not see anyone exit the vehicle, nor did he see anyone around the club.

Mr. Smith's suspicions grew when the vehicle exited the parking lot with its lights off. He called law enforcement officers

and reported that a gold or brown Ranchero-type pickup truck had left the parking lot with its lights off. The law enforcement dispatcher immediately called Muskogee County Deputy Sheriff Kenneth Morgan to relay the information to him. Deputy Morgan proceeded to the area and located a vehicle matching the description approximately one-quarter to one-half of a mile from the club in the direction reported.

Deputy Morgan called for a backup officer and stopped the vehicle to investigate. The driver, appellant Swepston, emerged from the vehicle and produced identification pursuant to Deputy Morgan's request. At this time, the officer noticed several cases of beer in the back of the vehicle. The officer then requested the passenger, appellant Epker, to get out, whereupon he noticed a gun sticking out from under the front of the driver's side seat. He also discovered some packages of frozen catfish and frozen hot links in the back of the vehicle. The beer and frozen goods were allegedly stolen from Cotton's Club. The gun was also allegedly stolen, though not from the club.

Before trial, a hearing was held on a motion to suppress the beer, frozen goods and gun on the grounds that the investigatory stop and subsequent search and seizure were unconstitutional. The trial court denied the motion to suppress and appellants contend that the court erred in its decision. We agree.

We have repeatedly held that a law enforcement officer may stop and question a person if there is reasonable suspicion to believe the person is wanted for past criminal conduct. *Lunsford v. State,* 652 P.2d 1243 (Okl.Cr.1982), citing *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), *reh'g denied,* 455 U.S. 1008, 102 S.Ct. 1648, 71 L.Ed.2d 877 (1982); *King v. State,* 667 P.2d 474 (Okl.Cr.1983); *Jones v. State,* 718 P.2d 712 (Okl.Cr.1986). We have further stated:

> The officer must be 'able to point to specific and articulate facts which taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry v. Ohio,* 392 U.S. 1, 21,

88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

*Lunsford,* 652 P.2d at 1244.

Deputy Morgan testified at the motion to suppress hearing that the only specific facts which he knew at the time of the investigatory stop was that a vehicle similar to the one appellants were driving had been seen leaving the parking lot of a club in an isolated area without its headlights on during the early morning hours. The officer did state that under those circumstances he was "suspicious" that something illegal such as a burglary might have occurred, however, he did not have a report of any criminal activity by any person around the club that night. (M.Tr. 22–23). He further testified that the circumstances leading to the investigatory stop "makes one wonder." (M.Tr. 25). We are of the opinion that these facts alone with inferences rationally drawn from such are not a sufficient basis for a reasonable suspicion that appellants are wanted for past criminal conduct.

We acknowledge that some of this Court's past decisions have permitted officers to stop the vehicles of suspects in suspicious circumstances. However, these cases involved either of two situations. The first situation is that the vehicles which were stopped or the occupants of such vehicles matched descriptions of vehicles or persons which had recently left the scene of a crime. *See, Swain v. State,* 621 P.2d 1181 (Okl.Cr.1980); *King v. State,* 667 P.2d 474 (Okl.Cr.1983). The other situation occurs when an officer's suspicions were reasonable in light of other circumstances. *McAlpine v. State,* 604 P.2d 1258 (Okl.Cr.1980) (suspicious activity observed occurred in an area that had experienced recent criminal activity of the kind suspected), *Lumpkin v. State,* 683 P.2d 985 (Okl. Cr.1984) (officer received several reports from neighbors concerning a body being put in the car's trunk and other facts suggesting a murder had been committed and also witnessed the suspect speed away from home). In the case at bar, neither of these situations existed. Deputy Morgan admittedly was not looking for suspects in

a recent crime, nor did additional circumstances exist to warrant any reasonable suspicion.

In *Sowell v. State*, 620 P.2d 429 (Okl.Cr. 1980), this Court found that an investigatory stop similar to the one at bar violated the rights of a driver who was stopped and told to provide identification, and whose truck was subsequently searched merely because the officer thought he "looked suspicious." We held that such conduct by the officer "without any specific basis or criteria for believing defendant was involved in criminal activity is not allowed under the guarantees of the Fourth Amendment." *Sowell*, 620 P.2d at 431. The circumstances surrounding the case at bar are very similar to *Sowell*, and we again find that the Fourth Amendment rights of appellants were violated when Deputy Morgan stopped them, demanded identification, and searched the truck "without any specific basis or objective criteria for believing" that they were involved in criminal activity. *Id.* Likewise, the evidence gained was the result of an unreasonable search and should have been suppressed. *Id.*

For the reasons stated above, the judgments and sentences appealed from are REVERSED.

PARKS, J., specially concurs.

BUSSEY, J., dissents.

PARKS, Judge, specially concurring:

I write separately to address the issue of "reasonable suspicion" for an investigatory stop. I agree in the reversal of these convictions, but wish to point out additional evidence presented at trial regarding the information received by Deputy Morgan.

Mr. L.K. Smith telephoned the police regarding a gold truck in the parking lot of Cotton's Club. He did not identify himself to the police dispatcher because he did not want to get involved. Deputy Morgan testified that he made the investigatory stop based on this anonymous tip. Apparently, he did not know the information was given by a citizen informant.

In my opinion, these facts are very important because case law indicates that a citizen informant will be given almost a "presumption of reliability." *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). But here, Deputy Morgan did not know the information was obtained through the tip of a citizen. While it is not required that the stop be based on the police officer's personal observation, an informant's tip must have some indicia of reliability. *Id.* 92 S.Ct. at 1924. Here, the police officer had no knowledge as to the reliability of the informant. He had never met Mr. Smith and in fact, did not even know his name.

Accordingly, I concur.

BUSSEY, Judge, dissenting:

I must dissent to the reversal of appellant's convictions. In the instant case the investigatory stop was based upon Mr. Smith's observation that a strange vehicle was traveling up and down a rural highway with its headlights off, parking in the parking lot of a closed business next to his house, and then leaving the parking lot with its lights off. When Deputy Morgan stopped a vehicle, matching the description Mr. Smith called in, one-quarter to one-half of a mile from the club, he observed several cases of beer in the back of the vehicle in plain view as well as frozen catfish and frozen hot links.

In *Atterberry v. State*, 726 P.2d 898 (Okl.Cr.1986), the defendant was stopped by a police officer after a female jogger reported that he had been following her in his pickup truck and staring at her. When the defendant was stopped, the officer observed him drop a white package to the ground, which was later determined to be a narcotic. In *Atterberry*, this Court held that the trial court properly overruled the defendant's motion to suppress and stated that, "A police officer has a right and a duty to investigate unusual or suspicious circumstances." *Id.* at 899. This is a duty which arises out of the central rule of the police in the prevention and detection of crime. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880–81, 20 L.Ed.2d 889, 906 (1968). In accordance with this duty, "a police officer may in appropriate circum-

stances and in an appropriate manner approach a person for purposes of investigating *possibly* criminal behavior even though there is no probable cause to make an arrest." (Emphasis Added) *Id.*

Based upon *Atterberry* and *Terry,* I am of the opinion that the Deputy had both a right and duty to conduct a brief investigatory stop to investigate the possible criminal behavior, and that when he observed the cases of beer and food in plain view in back of the vehicle, he had probable cause to arrest the appellants. I would affirm the judgments and sentences.